IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **RICHARD BAILEY,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:11-CV-1110-L** |
| | § | |
| **JANET NAPOLITANO**, Secretary | § | |
| Department of Homeland Security, | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court are Defendant's Partial Motion to Dismiss, filed August 1, 2011, and Defendant's Motion for Summary Judgment, filed February 24, 2012. After carefully considering the motions, responses, replies, appendices, and applicable law, the court **grants** Defendant's Motion for Summary Judgment and **denies as moot** Defendant's Partial Motion to Dismiss.

### I.    Factual and Procedural Background

On May 26, 2011, Richard Bailey ("Bailey" or "Plaintiff") filed Plaintiff['s] Original Complaint against Janet Napolitano, Secretary, Department of Homeland Security ("Defendant").[1] Bailey contends that Defendant discriminated against him on the bases of race, sex, age, and disability, in violation of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C § 2000e, *et seq.*, the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et. seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et. seq.*

Richard Bailey was hired by the Federal Aviation Administration on April 7, 2002, as a Federal Air Marshal ("FAM"). The duties of a FAM include responding to hostile acts aboard

---

[1] Defendant Janet Napolitano is sued in her official capacity as Secretary of the Department of Homeland Security. Plaintiff, therefore, is bringing a suit against the agency.

U.S. air carriers, along with investigating, apprehending, or detaining individuals suspected or convicted of offenses against criminal laws in relation to U.S. air carriers, airports, passengers, and crews.  In 2005, the Federal Air Marshal Service ("FAMS") was transferred to the United States Department of Homeland Security, Transportation Security Administration ("TSA" or "Agency"), where Bailey is currently employed as a FAM.  While on duty in April 2004, Plaintiff injured his left knee and received a limited or light duty[2] assignment at that time.  Plaintiff reinjured his left knee while on duty on January 15, 2008.  In January 2008, Plaintiff requested a limited or light duty assignment; Plaintiff was denied limited or light duty work.  According to Plaintiff, he was informed that there was not a limited or light duty policy.  According to Defendant, the local policy of the Dallas Field Office ("DFO") at the time of Plaintiff's injury was that limited duty assignments (for employees injured on the job) and light duty assignments (for employees suffering nonwork-related injuries or illnesses) were dependent upon work being available and the available duty functions the employee was capable of performing.  If no limited or light duty work was available, the employee was required to take sick leave.

All medical documentation received from Plaintiff's treating physician during January 2008 indicated that Plaintiff was unable to resume his duties as a FAM, and there was no indication that he could work in a limited duty capacity.  Plaintiff's claim for workers' compensation benefits was accepted, and he was granted such benefits.  Worker's compensation benefits include rehabilitation, medical, surgical, and necessary expenses.  Plaintiff received continuation of pay in the amount of his full salary for forty-five days, from January 16, 2008,

---

[2] The evidence provided to the court uses the terms "limited duty" and "light duty" inconsistently and sometimes interchangeably.  It appears, however, that limited duty assignments are for employees injured on the job, and light duty assignments are for employees suffering nonwork-related injuries or illnesses.  For purposes of this motion, the court does not distinguish between "limited duty" and "light duty."

through February 29, 2008; he was then placed on leave without pay while receiving worker's compensation benefits for the remaining time he was off work.  On February 26, 2008, Plaintiff's physician cleared him for limited duty work beginning March 1, 2008.

On April 1, 2008, FAMS headquarters directed the DFO to provide limited or light duty for all FAMs who were out of the office due to injury or illness but able to perform limited or light duty work.  FAMs were assigned to answer office telephones, perform basic computer entry and typing, make photocopies, and screen visitors for entry.  On April 24, 2008, Bailey returned to work in a limited duty capacity and was assigned to work in the reception area because the DFO was fully staffed and there was little productive work available.  Plaintiff was cleared to return to full duty on May 24, 2008, and has been on full duty status since that time.

Plaintiff first contacted the TSA's Office of Civil Rights and Liberties regarding his Equal Employment Opportunity ("EEO") claims on December 3, 2009.  He then filed a formal "Individual Complaint of Employment Discrimination" (hereinafter, "EEO Complaint" or "Administrative Charge") on March 30, 2010.  A formal EEO investigation was conducted, and the Equal Employment Opportunity Commission ("EEOC") issued a decision in favor of TSA, finding no discrimination on the bases of age, race, or sex.

## II.   Defendant's Partial Motion to Dismiss

Defendant moves to dismiss the following claims for lack of subject matter jurisdiction: (1) Plaintiff's disability discrimination claim, set forth in Count One of Plaintiff['s] Original Complaint; and (2) Plaintiff's race and sex discrimination claims asserted under 42 U.S.C. § 1981, set forth in Counts Three and Four of Plaintiff['s] Original Complaint.  Count One of Plaintiff['s] Original Complaint is a claim alleging a violation of the Americans with Disabilities Act of 1990 ("ADA"), in violation of 42 U.S.C. § 12112.  With respect to Plaintiff's disability

discrimination claim, Defendant asserts that this claim should be dismissed because the ADA does not provide a private right of action against the federal government.   Defendant also contends that even if Plaintiff invoked the correct statute, the Rehabilitation Act of 1973, his claim would still be barred because he failed to exhaust his administrative remedies with respect to his disability discrimination claim.   With respect to Plaintiff's race and sex discrimination claims under 42 U.S.C. § 1981, Defendant asserts that these claims should be dismissed because there is no waiver of sovereign immunity under section 1981 and, thus, no right of action against the federal government.

Regarding his disability claim, Plaintiff has amended his complaint and replaced his ADA claim with a claim under the Rehabilitation Act of 1973 (29 U.S.C. § 701 *et seq.*).   The court also notes that Defendant fully incorporates its arguments regarding Plaintiff's alleged failure to exhaust his administrative remedies into Defendant's Motion for Summary Judgment. Regarding his section 1981 discrimination claims, Plaintiff has amended his complaint and no longer alleges claims under this section.[3]   As Defendant's requests to dismiss Plaintiff's claims are either made moot by the filing of Plaintiff['s] First Amended Original Complaint or are incorporated into its motion for summary judgment, the court **denies as moot** Defendant's Partial Motion to Dismiss.

## III.    Legal Standard for Motion for Summary Judgment

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v.*

---

[3] Plaintiff['s] First Amended Original Complaint still mentions 42 U.S.C. § 1981 in the section entitled "Nature of Action." First. Am. Compl. ¶ 5.  Plaintiff, however, eliminates any mention of 42 U.S.C. § 1981 in Counts 3 and 4, which state claims for race and sex discrimination.   The court believes this was an oversight, as Plaintiff['s] Reply to Defendant's Partial Motion to Dismiss states that Plaintiff  "no longer brings action against Defendant under Title 42 U.S.C. § 1981 . . . ."  Pl.'s Reply 2.   Accordingly, the court determines Defendant's request to dismiss this claim is moot.

*Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party.  *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment.  *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).  Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.  *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim.  *Ragas*, 136 F.3d at 458.  Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment.  *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992).  "Only disputes over facts that might affect the outcome of the suit under the

governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## IV.    Analysis

Defendant moves for summary judgment on each of Plaintiff's claims for race, sex, age, and disability discrimination. Plaintiff contends he was discriminated against when the DFO denied his request for limited duty after he sustained a knee injury in January 2008. Plaintiff asserts that while he was denied limited or light duty work, such work was granted to females, African-Americans, and individuals under the age of forty. Defendant asserts that it has a legitimate, nondiscriminatory reason for not granting Plaintiff's limited duty request and that Plaintiff is unable to show that its reason is pretextual.

### A.  Administrative Exhaustion of Disability Claim

Defendant contends that Plaintiff is barred from asserting his disability discrimination claim because he failed to exhaust his administrative remedies with respect to that claim during the EEOC proceeding. Plaintiff counters that his disability discrimination claim is not barred because it is like or related to the charge allegations and could reasonably be expected to grow out of his initial charge of discrimination. Plaintiff asserts that during the EEOC investigation, and as shown by his affidavit, he was questioned concerning his claim of disability discrimination.

### 1.   Exhaustion: Jurisdictional Requirement or Precondition to Suit

The Rehabilitation Act of 1973 as amended, 29 U.S.C. § 791 *et seq.*, adopts the remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964.  29 U.S.C. § 794a(a)(1).  Thus, the Rehabilitation Act establishes a private right of action subject to the same procedural constraints (including administrative exhaustion) set forth in Title VII of the Civil Rights Act.  *Prewitt v. United States Postal Service*, 662 F.2d 292, 304 (5th Cir. 1981).

Defendant contends that Plaintiff's disability claim under the Rehabilitation Act of 1973 should be dismissed for lack of subject matter jurisdiction.  Defendant cites *Boswell v. Department of the Treasury*, 979 F. Supp. 458, 462 (N.D. Tex. 1997) ("Rule 12(b)(1) may not represent the most appropriate vehicle for dismissing a claim on the ground that the plaintiff failed to exhaust administrative remedies. This is so because various courts have noted that administrative exhaustion is not, strictly speaking, a jurisdictional prerequisite but rather a condition precedent to suit which is subject to equitable tolling and waiver." (citations omitted)).  Defendant states that a court is not precluded from addressing the issue of exhaustion in a Rule 12(b)(1) motion.

As noted by the Fifth Circuit, "[t]here is disagreement in [the] circuit on whether a Title-VII prerequisite, such as exhaustion, is merely a precondition to suit, and thus subject to waiver and estoppel, or whether it is a requirement that implicates subject matter jurisdiction."  *Pacheco v. Mineta*, 448 F.3d 783, 788 n.7 (5th Cir. 2006) (discussing the disagreement between various Fifth Circuit panels).  In acknowledging this conflict of authorities, the court in *Pacheco* stated:

> The Supreme Court has held that the EEOC or EEO *filing deadlines* are not jurisdictional. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394-95 (1982); *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95 (1990).  *See also Coke v. General Adjustment Bureau*, 640 F.2d 584, 589 (5th Cir. 1981) (*en banc*); *Henderson v. United States Veterans Admin.*, 790 F.2d 436, 440 (5th Cir. 1986). However, the reasoning in *Zipes*, which cites our *en banc* holding in *Coke* with

approval, relies heavily on legislative history and Supreme Court precedents that characterize the filing deadlines as statutes of limitations. *See, e.g., Henderson v. U.S. Veterans Admin.*, 790 F.2d 436, 440 (5th Cir. 1986) ("The filing deadlines are in the nature of statutes of limitations which are subject to waiver, estoppel, and equitable tolling."). Neither the Supreme Court nor this court sitting *en banc* has ruled that the *exhaustion* requirement is subject to waiver or estoppel, and our panels are in disagreement over that question. *Compare Tolbert v. United States*, 916 F.2d 245, 247 (5th Cir. 1990) ("It is the well-settled law of this circuit that each [Title VII] requirement is a prerequisite to federal subject matter jurisdiction.") and *Porter v. Adams*, 639 F.2d 273, 276 (5th Cir. 1981) ("The exhaustion requirement . . . is an absolute prerequisite to suit") and *Randel v. Dep't. of U.S. Navy*, 157 F.3d 392, 395 (5th Cir. 1998) ("If the claimant fails to comply with either of these [Title VII] requirements then the court is deprived of jurisdiction over the case.") with *Young v. City of Houston, Tex.*, 906 F.2d 177, 180 (5th Cir. 1990) ("A failure of the EEOC prerequisite does not rob a court of jurisdiction.") and *Fellows v. Universal Restaurants, Inc.*, 701 F.2d 447, 449 (5th Cir. 1983) ("The basic two statutory requirements (although these are not necessarily 'jurisdictional') for a Title VII suit are . . . .").

*Pacheco*, 448 F.3d at 788 n.7.

The court believes the better approach is to treat non-exhaustion of administrative remedies as a failure to satisfy a precondition to filing suit, considering the Supreme Court's holding in *Zipes*; the Fifth Circuit's holdings in *Fellows, Young, and Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002) ("Although filing of an EEOC charge is not a jurisdictional prerequisite, it 'is a precondition to filing suit in district court.'"); and more recent cases finding administrative requirements to be preconditions to suit rather than jurisdictional requirements. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515-16 (2006) (holding the 15-or-more employee requirement for liability under Title VII does not restrict jurisdiction); and *EEOC v. Agro Distrib. LLC*, 555 F.3d 462, 468-69 (5th Cir. 2009) (concluding that the "EEOC's conciliation requirement is a precondition to suit but not a jurisdictional prerequisite")). Thus, the court ultimately decides that it has jurisdiction. The court now turns to whether Plaintiff has satisfied the exhaustion of administrative remedies precondition to bringing suit on his discrimination claim.

### 2.   Whether Plaintiff Has Exhausted Administrative Remedies

The exhaustion requirement has been defined in light of two competing Title VII policies that it furthers.  "On the one hand, because the provisions of Title VII were not designed for the sophisticated, and because most complaints are initiated *pro se*, the scope of an EEOC complaint should be construed liberally."  *Pacheco*, 448 F.3d at 788 (internal quotation marks and citations omitted).  "On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims."  *Id.* at 788-89.  "[A] *less* exacting rule would also circumvent the statutory scheme, since Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance."  *Id.* at 789 (citation omitted).  "With that balance in mind, [courts] interpret[] what is properly embraced in review of a Title-VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  *Id.* (internal quotation marks and citation omitted).

On its face, Bailey's Individual Complaint of Employment Discrimination does not allege a disability discrimination claim.  Plaintiff only checked the boxes for race, sex, and age discrimination.  Plaintiff left blank the box for discrimination due to physical or mental disability.  Plaintiff alleged in his EEO Complaint: "I was denied light duty, when light duty was being granted to Females and African Americans.  Light duty was only being denied to white males over the age of 40.  I suffered losses and benefits."  Def.'s App. 70.  Courts "do not require that a Title-VII plaintiff check a certain box or recite a specific incantation to exhaust his or her administrative remedies before the proper agency."  *Pacheco*, 448 F.3d at 792 (citations

omitted).  Courts do not "require, for purposes of exhaustion, that a plaintiff allege a prima face case before the EEOC." *Id.* (citation omitted).  "Instead, the plaintiff's administrative charge will be read somewhat broadly, in a fact-specific inquiry into what EEOC investigations it can reasonably be expected to trigger." *Id.*

The court observes that in Plaintiff's affidavit sworn to before the EEO investigator, he responds to the question, "Why do you believe you were discriminated against based on your disability when your request for limited duty was denied?"  Def.'s App. 12-13.  The actual scope of an EEOC investigation, however, does not determine whether a claim is exhausted, but rather what we reasonably would expect the EEOC to investigate.  *Clark v. Kraft Foods*, 18 F.3d 1278, 1280-81 (5th Cir. 1994) (citation omitted).  The court concludes that whether Bailey initially raised the issue of disability discrimination in the administrative process is not determinative because, as more fully discussed below, Bailey abandoned his claim for disability discrimination.

Exhaustion of remedies not only requires that the employee raise the issues in the administrative process, but also see them though to a final determination.  *See Pacheco*, 448 F.3d at 789.  ("Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance.")   On May 13, 2010, the Agency sent Plaintiff a letter framing the issues for administrative determination.[4]  The letter stated that the following claims were accepted for investigation:

> Whether you, a Federal Air Marshal[], SV-1801, I-Band, at the Dallas Field Office, Dallas, Texas, were discriminated against based on sex (male), race (white), and age (over 40) when on November 27, 2009, you learned that you were denied a limited duty assignment based on the directive of the Special Agent in Charge.

---

[4] The court observes that Plaintiff's EEOC affidavit was signed on August 7, 2010, after the Agency sent its letter framing the issues for administrative determination.  The court, however, determines that Plaintiff failed to object to the framing of the case after the Agency sent its Acknowledgement and Order and in his briefing before the Administrative Law Judge.

**Memorandum Opinion and Order – Page 10**

Doc. 15 at 015.     The letter stated that several of Bailey's claims were being dismissed in accordance with 29 C.F.R., Part 1614, including:

> 2. Whether you were subjected to a hostile work environment based on disability (knee) while on light duty when the following occurred:
>
>> a. On unspecified dates the Assistant Special Agent in Charge had you and eight other light duty employees work in a very small room.
>>
>> b. On unspecified dates you were forbidden to have food or drink in the small room.

Doc. 15 at 016.

On December 9, 2010, the Agency sent to Plaintiff an "Acknowledgement and Order" acknowledging receipt of his request for hearing, assigning Plaintiff's case to an Administrative Law Judge ("ALJ"), and requiring the parties to "identify any claims the Agency has dismissed from the complaint during the Agency investigative process" and oppose in writing the dismissal within thirty days of receipt of the order.   Doc. 15 at 039.   Plaintiff did not object to the exclusion of any disability-related claim during the thirty-day period.   The TSA filed its Motion for Findings and Conclusions without a Hearing on January 25, 2010, stating the issue accepted for investigation as Plaintiff's claims for discrimination based on sex, race, and age, and arguing that Plaintiff could not make a prima facie case "of any type of discrimination."   Doc. 15 at 045, 046, 056.   Plaintiff, represented by counsel, provided a memorandum in response to the Agency's motion on February 14, 2010.   In his response, Plaintiff stated that he was "discriminated against on the basis [of] sex (male), race (white), and age (over 40) when he was not granted light duty in January 2008."   Doc. 15 at 058.   In his response, Plaintiff stated that the issue accepted for investigation was whether he "was discriminated against based on sex (male), race (white), and age (40) when on November 27, 2009, [he] learned that he was denied a limited duty assignment based on the directive of the Special Agent in Charge."   Doc. 15 at 059.   In his

**Memorandum Opinion and Order – Page 11**

response, Plaintiff did not assert any disability claim.  Doc. 15 at 058-68.  The ALJ considered only whether Plaintiff was discriminated against on the basis of sex, race, and age, in her summary decision.  Def.'s App. 055, 065.

The court finds that Plaintiff has abandoned any alleged disability claim, as he did not object to the framing of the issue by TSA's Office of Civil Rights and Liberties or in his briefing before the ALJ.  Thus, his employer was not given the opportunity to effectively try to eliminate possible discrimination practices and policies as it relates to any alleged disability discrimination.  *See Pacheco*, 448 F.3d at 788-89 ("[A] primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims . . . Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance."); *see also Clayton v. Rumsfeld*, 106 F. App'x 268, 271 (5th Cir. 2004) (finding that employee failed to exhaust her administrative remedies where she did not raise the issue in the administrative process and abandoned her demotion claim by failing to "object to the framing of the issue by the EEOC and the ALJ, which issue did not include her demotion claim.")  As the court has determined that Plaintiff abandoned his claim for disability discrimination and thus failed to exhaust his administrative remedies, his disability claim is therefore barred because he did not satisfy a precondition to filing suit.  For this reason, no genuine dispute of material fact exists, and Defendant is entitled to judgment as a matter of law on Plaintiff's disability discrimination claim.

### 3.   Race and Sex Discrimination

The court now turns to Plaintiff's race and sex discrimination claims.  As Plaintiff offers only circumstantial evidence of discrimination, his claim is analyzed using the modified

*McDonnell Douglas* burden-shifting paradigm.  *See Jackson v. Watkins,* 619 F.3d 463, 466 (5th Cir. 2010).  To survive a motion for summary judgment, a plaintiff in a Title VII discrimination case must first establish a *prima facie* case of discrimination by a preponderance of the evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).   Once this *prima facie* case has been established, there is a presumption of discrimination, and the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the challenged employment action. *McDonnell Douglas*, 411 U.S. at 802-04.  If such a showing is made, the burden shifts back to the plaintiff to demonstrate that the articulated reason was merely a pretext for intentional discrimination.  *Id.*

The third step of the *McDonnell Douglas* test has been altered by the Supreme Court's decision in *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003) (holding that in Title VII cases, the mixed-motives theory of discrimination is available in cases with circumstantial evidence of discrimination).   In light of *Desert Palace*, the Fifth Circuit has modified the final step of *McDonnell Douglas*.  *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.,* 482 F.3d 408, 411 (5th Cir. 2007).  To survive summary judgment under the modified *McDonnell Douglas* test, at the final step, a plaintiff must offer sufficient evidence to create a genuine dispute of material fact that either: (1) a defendant's reason is a pretext for discrimination, or (2) a defendant's reason, though true, is only one of the reasons for its conduct and that another "motivating factor" is the plaintiff's protected characteristic.  *Id.* at 411-12.

Assuming without deciding that Bailey has established a *prima facie* case of race and sex discrimination, the court now turns to whether Defendant has shown a legitimate, nondiscriminatory reason for its denial of Plaintiff's request for light or limited duty.

**Memorandum Opinion and Order – Page 13**

### 1.  Legitimate, Nondiscriminatory Reason

The employer "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Burdine,* 450 U.S. at 257.  "The defendant need not persuade the court that it was actually motivated by the proffered reasons.  It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* at 254 (citation omitted).  "To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant." *Id.* at 255. Defendant's burden is only one of production, not persuasion, and involves no credibility assessment. *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007) (citation omitted).

Defendant presented evidence, a TSA memorandum regarding sick leave and light duty status procedures, explaining that the local policy of the Dallas Field Office at the time of Plaintiff's injury was that limited duty assignments, for employees injured on the job, and light duty assignments, for employees suffering nonwork-related injuries or illnesses, were dependent upon work being available and the available duty functions the employee was capable of performing.  Defendant also presented evidence that at the time of Plaintiff's inquiry in January 2008, no light or limited duty assignments were available.    Jerry Patton, Special Agent in Charge ("SAC"), Senior Executive Service, Dallas Field Office, FAMS, stated in his affidavit:

> In 2002-2004, we had a number of functions in a command center that we used back then for limited duty assignments. This was while we were staffing up. Once we got staffed up, we no longer had excess administrative work that could support a limited duty assignment. That is most likely the reason [Plaintiff] was given a limited duty assignment in 2004. It had nothing to do with his being younger back in 2004. Now that we have all our support staff, we no longer have work to assign them.

Def.'s App. 019.

Defendant also provided evidence that on April 1, 2008, FAMS headquarters directed the DFO to provide light or limited duty for all FAMs who were out of the office due to injury or illness but able to perform light or limited work. SAC Patton also stated in his affidavit that at the time Plaintiff was called back to work for light or limited duty, the DFO "had no light duty assignments available, but had been instructed by Headquarters to call everyone back in." Def.'s App. 017. SAC Patton further stated that he "was informed Headquarters was working on the light/limited duty policy, but in the interim we had to bring them back in, even though we had no meaningful work for them to do." *Id.*

The court determines that Defendant has articulated a legitimate, nondiscriminatory reason for denying Plaintiff's request for limited or light duty. Defendant has provided evidence that it did not have limited or light duty assignments available at the time of Defendant's request, and its policy at that time was that limited and light duty assignments were dependent upon work being available and the available duty functions the employee was capable of performing. Defendant's burden is only one of production, not persuasion, and the court finds that Defendant has met its burden in this case.

### 2.   Pretext or Motivating Factor

Since Defendant has set forth a legitimate, nondiscriminatory reason for denying Plaintiff's request for a light or limited duty assignment, the burden shifts back to Plaintiff, who

must either show that: (1) Defendant's proffered reason is a pretext for discrimination or (2) Defendant's reason, although true, is only one of the reasons for its conduct and that another "motivating factor" is Plaintiff's protected characteristic.  *Burrell*, 482 F.3d at 411-12.

After a Title VII case reaches the pretext stage, the question to be decided for the resolution of a motion for summary judgment is whether a rational factfinder could find that the employer intentionally discriminated against the plaintiff on the basis of race or sex.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).  A "plaintiff can survive summary judgment by producing evidence that creates a jury issue as to the employer's discriminatory animus or the falsity of the employer's legitimate nondiscriminatory explanation."  *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002), *cert. denied*, 539 U.S. 926 (2003).  "Pretext-plus" is not required to support an inference of retaliatory discrimination.  *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 223 (5th Cir. 2000).  "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated," and may therefore be enough to prevent summary judgment or judgment as a matter of law.  *Reeves*, 530 U.S. at 148; *Sandstad*, 309 F.3d at 897.  This showing, however, is not always enough to prevent summary judgment "if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred."  *Reeves*, 530 U.S. at 148.

Plaintiff conclusorily states that "[w]hether there were limited-duty positions available is a genuine issue of material fact precluding summary judgment."  Pl.'s Opp'n 7.  Plaintiff further alleges "that there were similarly situated persons who were treated more favorably, as described

in [his] complaint and affidavit."  Pl.'s Opp'n 7.  Plaintiff's Opposition to Defendant's Motion for Summary Judgment offers insufficient evidence to demonstrate the existence of a genuine dispute of material fact with respect to the pretext or motivating factor analysis.  Bailey filed no appendix or evidence in support of Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment.  Plaintiff's opposition contains two citations to evidence, both to a single page of Plaintiff's own affidavit provided in Defendant's appendix.  The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim.  *Ragas*, 136 F.3d at 458.  Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment.  *Id*.  The court has nevertheless undertaken a comprehensive review of the record, including Plaintiff's affidavit.

Plaintiff stated in his affidavit that he learned that SAC Patton granted limited duty assignments to others for medical conditions.  Def.'s App. 10.  He stated that a Black male in his late 30s was given a limited duty assignment.  *Id.*  He also stated that three female FAMs, whose races and ages, he is unsure of, were granted limited duty when they were pregnant.  *Id.*  Plaintiff later stated in his affidavit that the FAMs who had their limited duty requests approved were less than 40 years old.  Def.'s App. 12.  Bailey further stated in his affidavit that, when he was injured in 2004, he was under 40 years old, and was given a limited duty assignment; however, in 2008, when he was over 40 years old, he was not given a limited duty assignment.  *Id.*

Plaintiff's statements in his affidavit do not specify the time period in which the other FAMs were granted limited or light duty.  Defendant's evidence demonstrates that two of Plaintiff's alleged comparators were released to light duty in December 2007, several months before Plaintiff was cleared by his doctor to return to limited duty in March 2008.  Defendant's

evidence also demonstrates that these comparators were accommodated only after the DFO received specific accommodation instructions from FAMS headquarters, which was in the process of developing special policies relating to its light duty conditions.

Even assuming that Plaintiff's alleged comparators are similarly situated and that they were treated more favorably[5] than Plaintiff, he has not shown pretext.  Plaintiff has not demonstrated that Defendant's reasons for providing light duty to other FAMs were discriminatory.  Plaintiff's opposition states that "[i]t is noteworthy to state that SAC Patton and ASACs Brashear and Ballinger have conflicting assertions regarding whether a light-duty policy existed." Opposition 9.  Plaintiff goes on to state the "[w]hether or not a light–or limited–duty policy actually was in existence is a fact question that is to be left to the jury." *Id.*  Plaintiff cites to no evidence, and Plaintiff also does not demonstrate how his assertion shows that race or sex was a motivating factor in or the true reason for his denial of light or limited duty.  Further, the court notes that Plaintiff does not argue pretext or motivating factor; Plaintiff merely argues that he has met his *prima facie* burden and that Defendant has failed to meet its burden to proffer a legitimate, nondiscriminatory reason for its employment decision.  Plaintiff has offered no evidence of a discriminatory motive on the part of Defendant.  Plaintiff simply has not demonstrated that Defendant's proffered reason is a pretext for discrimination, or that Defendant's reason, although true, is only one of the reasons for its conduct and that another motivating factor is Plaintiff's race or sex.  Accordingly, Plaintiff has not raised a genuine

---

[5] To establish a *prima facie* case of race discrimination in employment, Plaintiff must show:

(1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances.

*Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).

dispute of material fact on either claim, and Defendant is entitled to summary judgment on Plaintiff's race and sex discrimination claims.

### 4. Age Discrimination

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "A plaintiff can demonstrate age discrimination in two ways, either through: direct evidence or by an indirect or inferential [circumstantial] method of proof." *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004)). Once a plaintiff establishes a *prima facie* case, the defendant must set forth a legitimate, nondiscriminatory reason for the employment action it took against the plaintiff. *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005). This is a burden of production, not persuasion, on the defendant's part, and it "can involve no credibility assessment." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993). If the defendant meets this burden, the plaintiff must establish that the employment action occurred because of intentional age discrimination. *Machinchick*, 398 F.3d at 350. This means that a plaintiff bringing a claim under the ADEA must prove "that age was the 'but-for' cause of the challenged employer decision." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (quoting *Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2352 (2009)).

The court assumes without deciding that Bailey has established a *prima facie* case of age discrimination, and the court previously determined that Defendant has met its burden of production with respect to its proffered reason (that limited or light duty work was not available) for denying Plaintiff's request for limited or light duty. The court now addresses whether

Plaintiff has provided any evidence to rebut Defendant's articulated reason for denying his request for limited or light duty.

Defendant raises the "same actor" inference.  *See Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996), *abrogated in part on other grounds by Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 225 (5th Cir. 2000) (observing that the plaintiff was hired at the age of 54, by the then 56 year old supervisor, and the plaintiff was fired only four years later, also by the same supervisor, who was then 60, and stating that this situation gives rise to an inference that age discrimination was not the motive behind the plaintiff's termination.)   Plaintiff argues that in 2004, when he was under 40 years old (37 years old), he was given a limited duty assignment after suffering a training injury.   Defendant offers evidence that the same supervisor, who has been in his position with the TSA since 2002, was responsible for granting Plaintiff's limited duty in 2004, and also for denying Plaintiff's limited duty request in 2008.

The court, determines that the same actor inference is inapplicable to the facts and circumstances of this case.   Such an inference presumes that the actor accused of discrimination granted a benefit to an individual, who was already a member of the protected class, and later allegedly denied a benefit to that individual.  *See Brown*, 82 F.3d at 658 (5th Cir. 1996) (quoting *Proud v. Stone*, 945 F.2d 796, 797 (4th Cir. 1991) ("[C]laims that employer animus exists in termination but not in hiring seem irrational. From the standpoint of the putative discriminator, it hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job.") (internal quotation marks omitted); s*ee also White v. Omega Protein Corp.*, 226 F. App'x 360, 362 (5th Cir. 2007) ("When the same person is responsible for hiring and terminating an individual, *who was already a member of the AEDPA-protected class when hired*, there is an

inference that age was not the reason for the termination.") (emphasis added).  Defendant was 37

years old when he was granted light duty in 2004 by SAC Patton; Defendant was not a member

of the protected class when he was initially granted light duty.  Thus, Plaintiff was not granted a

benefit by the actor accused of discrimination while a member of the protected class.

Accordingly, the "same actor" inference does not arise.

Despite the inapplicability of the "same actor" inference, Plaintiff's arguments fare no

better in the age discrimination context.  Plaintiff offers the same arguments and evidence with

respect to his age discrimination claim as he does for his race and sex discrimination claims.  The

court considers age discrimination separately here in light of the different 'but-for' standard in

the age discrimination context.  Plaintiff simply has not provided evidence that the employment

action occurred because of intentional age discrimination.  Bailey's subjective belief that his age

motivated his employer's action is insufficient to raise a genuine dispute of material fact.

*Roberson v. Alltel Info. Servs*., 373 F.3d 647, 654 (5th Cir. 2004) (A plaintiff's "subjective belief

that [he] was not selected for the position based upon race or age is insufficient to create an

inference of the defendants' discriminatory intent.") (brackets and citations omitted); *see also*

*Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) ("Conclusory allegations, speculation,

and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in a motion for

summary judgment.") (internal quotation marks and citation omitted).  Moreover, "[a]n age

discrimination plaintiff's own good faith belief that his age motivated his employer's action is of

little value." *Little v. Republic Refining Co.*, 924 F.2d 93, 96 (5th Cir. 1991).  Plaintiff has not

put forth evidence of intentional age discrimination and has only made conclusory allegations.

Accordingly, Plaintiff has not raised a genuine dispute of material fact, and Defendant is entitled

to summary judgment on Plaintiff's age discrimination claim.

## V.      Conclusion

For the reasons herein stated, the court **concludes** that Plaintiff has failed to exhaust his administrative remedies with respect to his disability discrimination claims.   The court **determines** that Plaintiff has failed to raise a genuine dispute of material fact that Defendant's proffered reason for its employment action is a pretext for discrimination or Defendant's reason, although true, is only one of the reasons for its conduct and that another motivating factor is Plaintiff's race or sex.   The court also **determines** that Plaintiff has failed to raise a genuine dispute of material fact that age was the "but-for" cause of Defendant's decision deny him light or limited duty.   Accordingly, Defendant is entitled to summary judgment as to all of Plaintiff's claims, and the court **grants** Defendant's Motion for Summary Judgment.   The court **denies as moot** Defendant's Partial Motion to Dismiss.   Pursuant to Rule 58 of the Federal Rules of Civil Procedure, the court will issue judgment by separate document.

**It is so ordered** this 11th day of May, 2012.

Sam A. Lindsay
United States District Judge